## Central Land Company v. Central City.

(Decided October 28, 1927.)

### Appeal from Muhlenberg Circuit Court.

1. Dedication.—Evidence held to show oral dedication of lot by plaintiff's predecessor in title to furnish prospective purchasers in subdivision an outlet to a road.

2. Dedication.—"Dedication" may be by parol, without particular form of words or ceremony; only essential being donor's intention to dedicate and subsequent acceptance by conduct of the public.

3. Dedication.—When owner records map, laying off into lots area adjoining city, and on plat furnishes evidence of intention to dedicate streets, and sells lots calling for streets as boundaries, there is dedication, particularly when streets so designated are for long time thereafter used by general public without restriction.

4. Dedication.—Where a subdivision adjoining city lot not originally designated on plat for a street was used as part of a street, and where territory was taken into city by ordinance and lot so designated as street was improved and treated as a street by the city, long-continued use thereof by public and repair by city was equivalent to formal acceptance.

5. Dedication.—Where plaintiff's lots were assessed for taxation by city as scattered and lump sum fixed as their aggregate value for taxation, city was not estopped from claiming dedication of one lot as a street, where, prior to 1921, lot was embraced in plaintiff's scattered property without city's knowledge, and where city thereafter assessed plaintiff's property in detail and declined to accept lot for assessment because it was a street.

HUBERT MEREDITH for appellant.

WILKINS & SPARKS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

This is an equitable action by appellants against the city of Central City, wherein the plaintiff asserts title to a small plot of land within the city, and seeks to enjoin

the municipality from going upon and improving the lot as a city street.

The answer denies plaintiff's ownership, and in addition relies upon an oral dedication by the plaintiff's predecessor in title made many years ago, and upon an estoppel alleged to grow out of the fact that plaintiff's predecessor in title had many years ago opened up a street over the land in question in preparation for a sale of lots, and the platting of the property owned by plaintiff's said predecessor just outside of the city limits of the city, and upon the continued and exclusive use by the public of the lot as a street for a long period of years. It is asserted that about the time of the platting the city limits of the city were extended and the land in controversy together with other property owned by plaintiff's predecessor taken into and included in the city limits, and that the city had thereafter, for 20 years or more before the filing of this suit, gone upon the lot in question and graded and otherwise improved it as a street of the city, whereby it had accepted the dedication so alleged to have been made.

The reply puts in issue the essential facts with reference to the dedication and acceptance, and affirmatively says that while some use had been made of a portion of the plot of ground described for travel by the public, such use was merely permissive, and that plaintiff at all times owned and claimed the parcel of land, and only permitted certain members of the public to use the same for a passway to a limited extent, with the understanding that the use was only permissive and temporary, and until such time as the city had an opportunity to straighten North Second street at its intersection with the South Carrollton road. The reply then affirmatively pleads that the plaintiff and its predecessor in title had during all the years named been required by the city to list and assess said plot of ground for taxation for city and school purposes, and required the plaintiff to pay taxes thereon during each of those years, whereby the city had recognized its ownership, and is now estopped to deny the same.

The affirmative allegations in the reply were controverted on the record; and thereafter the defendant tendered and offered to file an amendment alleging, in substance, that the city had by the enactment of an ordinance, general in its terms, on the 3d of May, 1921, ac-

cepted the plot of ground as a street of the city, together with other plots or tracts of land similarly situated within the city, and then alleges that for a longer period than five years prior to the 3d of May, 1921, the tract of land in question had been used as a public street within the city, and had been opened to the unrestricted use of the general public for five consecutive years prior thereto, and had during such time been continuously and adversely used by the public as a street of the city.

There appears no order of court filing the amendment, but, after the taking of much evidence, the cause was submitted, and the chancellor dismissed the plaintiff's petition.

The facts disclosed are that, about the year 1900 and prior thereto, appellant's predecessor in title, the Central Coal & Iron Company, owned a considerable tract of land just outside the then city limits and northwest of the Greenville and South Carrollton road; that the general territory so designated was at the time only sparsely settled, but about that time the Central Coal & Iron Company had it platted, designating certain streets and dividing the abutting property on those streets into lots. Among such streets were North Second and North Third streets, each of which it was designed should intersect the South Carrollton road at such points as would connect on the other side of that road with North Second and North Third streets. It so happened, however, that to make North Second street straight so as to intersect the South Carrollton road at the proper point it would be necessary for the Central Coal & Iron Company to buy certain property which it did not own and upon which there were some improvements, and thereby put that company to considerable expense in making the intersection at the point originally intended. Obviously to avoid the expense of acquiring the property so owned by others necessary to make the intersection with the South Carrollton road at that point, the Central Coal & Iron Company directed its officials to open the lot which it did own further north on the South Carrollton road so as to intersect with the North Second street on its plat, and offer an opening from the northern part of North Second street through that lot to the South Carrollton road at a point not originally designated on the plat for that purpose. The opening was made at the point indicated, and consists of the tract of land in controversy. And, while there

was no formal acceptance by the city of that opening as a street until 1921, it was acquiesced in, and the city for a period of 20 or 25 years graded, made walks upon, permited sewers to be built over, and otherwise treated that property as a street of the city. During that period the public had the unrestricted use of, and apparently claimed the right to use, and did use, that lot as an opening to North Second street and the territory beyond it, not only within the city, but as an outlet to a considerable portion of the country outside of the city. As we understand the evidence, that property was so in use by the public, and had been graded and otherwise improved at the time appellant is alleged to have acquired its title. About the time this part of that street was opened by the Central Coal & Iron Company in lieu of the originally intended extension of that street so as to intersect the South Carrollton road, the city took into the city limits all of that territory, and thereafter made all of the improvements referred to upon the lot in question as a part of North Second street.

The first question is whether the acts of the Central Coal & Iron Company, without any written dedication, are equivalent to an oral dedication, and then whether the unrestricted use by the citizens and the improvements by the city were equivalent to an acceptance of such oral dedication by the city.

The circumstances in evidence clearly indicate that it was important if not essential to the successful sale of a portion of the plotted subdivision that there should be an opening from the upper end of North Second street to the South Carrollton road, and, as the Central Coal & Iron Company did not itself own a part of the property necessary to make that extension as originally intended, and could not make it without the expenditure of considerable money, it utilized its own lot which was of much less value than the cost would have been in acquiring the property it did not own, and thereby furnished to prospective purchasers in that part of its subdivision assurance that they would have an outlet to the South Carrollton road. The incentive for the dedication of this lot therefore is obvious, and the evidence discloses that that company directed its officials to open that lot as a part of North Second street in its subdivision.

It is not necessary that a dedication should be in writing; not only may it be in parol, but no particular

form of words or ceremonies is necessary; the only thing necessary is that the intention of the donor to dedicate the thing to the public use must appear, and the subsequent acceptance by conduct of the public completes the act of dedication, without writing upon either side. Riley v. Buchanan, 116 Ky. 625, 76 S. W. 527, 25 Ky. Law Rep. 863, 63 L. R. A. 642, 3 Ann. Cas. 788; Hedge v. Cavender, 217 Ky. 524, 290 S. W. 342. Likewise, when an owner records a map laying off into lots an area adoining a city, and on such plat furnishes evidence of intention to dedicate the streets thereon to the city, and sells lots calling for the streets as boundaries, there is a dedication; and particularly will this be deemed a dedication when such streets so designated are for a long period of years thereafter used by the general public without restriction. City of Louisville v. Snow's Adm'r, 107 Ky. 536, 54 S. W. 860, 21 Ky. Law Rep. 1268.

It is entirely possible that in this case the original purpose was to make the extension of North Second street on a straight line so as to intersect the South Carrollton road; but it is apparent that that purpose was abandoned and the other opening to North Second street was made in lieu of the originally intended route as a matter of economy by the dedicator.

As to the question of acceptance by the city, there is little difficulty. It is shown beyond peradventure that the city, at all times since the territory had been taken into the city by ordinance about 1900, had at times gone upon this property and graded it, made walks upon it, and otherwise treated it as a city street, and such long-continued use by the public and repair by the city is equivalent to a formal acceptance. City of Harlan v. Parsons, 202 Ky. 358, 259 S. W. 717.

It is said, however, for appellant that it and its predecessor in title had during all the years from 1900 and up to 1925, when this suit was filed, assessed this lot for city purposes, and that the city required the payment, and that payment was made of taxes thereon, and that this is inconsistent with the dedication claimed by the city, and estops the city to claim the dedication. The facts, however, appear to be that prior to and during the year 1921 there were a number of scattered lots owned by appellant and its predecessor in Central City, and that such lots were assessed as "scattered," and a lump sum fixed as their aggregate value for taxation. So

that there is no definite evidence that the lot in question was ever assessed for taxation during those years in the city.

Beginning, however, with the year 1922, appellant assessed its various pieces of property in Central City separately and fixed a separate valuation upon each lot, and during each of the years thereafter undertook to assess this lot for taxation, but in each year the city declined to accept it for assessment, upon the idea that it was a city street, and declined to accept any taxes thereon.

It is apparent, therefore, that if prior to 1921, when appellant's property was assessed in bulk, the lot in question was embraced, it was without the knowledge of the city, for the first year that it undertook to assess its property in detail the city declined to accept this lot for assessment because it was a city street.

It is obvious there was no such conduct upon the part of the city as to estop it from claiming the dedication.

The facts seem to furnish a plain case of oral dedication by appellant's predecessor in title for purposes of its own, and such acts by the city and the public through a period of more than 20 years as are undeniably equivalent to an acceptance.

Judgment affirmed.